IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHING YEE WONG, an individual; and CHI KWONG LO, an individual, | |
| Plaintiffs, | CV-08-937-ST (Lead Case) |
| v. | |
| JANET NAPOLITANO, *et al.*, | OPINION AND ORDER |
| Defendants. | |
| ASIAN/PACIFIC AMERICAN CONSORTIUM ON SUBSTANCE ABUSE, a non-profit company, | |
| Plaintiff, | |
| v. | CV-09-132-ST (Related Case) |
| JANET NAPOLITANO, *et al.*, | |
| Defendants. | |

1 - OPINION AND ORDER

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiffs, Ching Ye Wong and Chi Kwong Lo, filed this action on August 9, 2008, seeking declaratory and mandamus relief to require defendants, Janet Napolitano, Secretary of the Department of Homeland Security ("DHS"), Michael Aytes, Acting Director of the United States Citizenship and Immigration Services ("USCIS"), and F. Gerard Heinauer, USCIS Nebraska Service Center Director,[1] to grant their I-485 applications for adjustment of status to "permanent resident status" pursuant to § 245(a) of the Immigration and Nationality Act ("INA"), as amended (codified at 8 USC § 1255). They allege this court has jurisdiction over their claims pursuant to 28 USC § 1331, the Administrative Procedures Act, 5 USC § 706, and the Declaratory Judgment Act, 28 USC § 2201(a).

Plaintiff, the Asian/Pacific American Consortium on Substance Abuse ("APACSA"), filed a separate action on January 1, 2009, against the same defendants also seeking declaratory and mandamus relief. APACSA seeks an order declaring USCIS's denial of APACSA's H-1B visa petition, made on behalf of Wong in April 2004, to be arbitrary, capricious, and unlawful. It alleges the same basis for jurisdiction. The two cases were consolidated due to common issues of law and fact.

Pursuant to FRCP 12(b)(1), defendants move to dismiss APACSA's Complaint based on lack of subject matter jurisdiction because APACSA lacks standing. All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with

---

[1] The court has substituted the current department heads for DHS and USCIS in place of the former heads against whom plaintiffs originally brought this case. FRCP 25(d). The caption is amended accordingly.

FRCP 73 and 28 USC § 636(c). For the reasons that follow, USCIS's motion is granted, and APACSA's claim is dismissed with prejudice.

## STANDARDS

Motions to dismiss under FRCP 12(b)(1) for lack of subject matter jurisdiction generally take two forms. First, a defendant may facially attack the allegations in the complaint as insufficient to establish subject matter jurisdiction. *Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F2d 730, 733 (9th Cir 1979). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F3d 1000, 1002 (10th Cir 1995).

Second, a party may go beyond the allegations in the complaint and attack the factual basis for subject matter jurisdiction. *Thornhill*, 594 F2d at 733. In that event, no presumptive truthfulness attaches to the factual allegations in the complaint. *Id.* In order to resolve disputed jurisdictional facts under FRCP 12(b)(1), a court has wide discretion to allow additional evidence. *Biotics Research Corp. v. Heckler,* 710 F2d 1375, 1379 (9th Cir 1983). A court's reference to evidence outside the pleadings does not convert the motion to a FRCP 56 summary judgment motion. *Id.* However, a court is required to convert a FRCP 12(b)(1) motion to dismiss into a FRCP 12(b)(6) motion or FRCP 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. *Augustine v. United States*, 704 F2d 1074, 1077 (9th Cir 1983).

///

///

///

3 - OPINION AND ORDER

## ALLEGATIONS

The allegations in APACSA's Complaint are accepted as true for purposes of this motion. In addition, relevant allegations from Wong's Complaint are included where appropriate to provide background details, but are not considered in addressing the sufficiency of the allegations in APACSA's Complaint to establish subject matter jurisdiction.

On February 7, 2002, USCIS granted Wong a change of status from an H-4 visa to an H-1B visa, effective from February 7, 2002, through January 14, 2005, to work as a graphic designer for a company called UNIPAK Designs, Inc.

On or about September 12, 2002, APACSA filed an H-1B extension petition on behalf of Wong with USCIS so that she could work for APACSA as a graphic designer. On March 12, 2003, USCIS issued a denial notice for APACSA's petition because it determined that APACSA's position of graphic designer was not a "specialty occupation" as required under the INA. *See* INA §§ 101(a)(15)(H), 214(i)(1), codified at 8 USC §§ 1101(a)(15)(H), 1184(i)(1). On April 15, 2003, APACSA timely filed an appeal of USCIS's denial decision with the Administrative Appeals Office ("AAO"). On or about April 28, 2004, the AAO dismissed APACSA's H-1B appeal, affirming USCIS's denial of the visa.

At some point, Wong left APACSA and began working for Olson Institutional Pharmacy Services, dba RX Direct. On May 12, 2004, RX Direct filed another H-1B extension on behalf of Wong for the position of graphic designer. In its petition, RX Direct disclosed the APACSA petition as still pending. On July 12, 2004, USCIS issued an official approval notice to RX Direct, granting its H-1B extension petition on behalf of Wong, effective through May 20, 2007. RX Direct filed a subsequent extension petition for Wong for the same position on

December 4, 2006, which UCSIS again granted on May 21, 2007, effective through May 20, 2010.

On July 2, 2007, Wong and her husband, Lo, filed I-485 applications for adjustment of status to permanent resident. USCIS denied their applications on June 25, 2008. Wong's denial notice asserted that she was ineligible for adjustment of status because she had "accrued approximately a year and a half of unauthorized employment by working for APACSA." USCIS denied Lo's application because, as Wong's dependant, he was not entitled to permanent resident status after Wong's application was denied.

Wong and Lo filed their lawsuit less than two months later. Prior to the denial of her I-485 application, Wong, APACSA, and Wong's attorney were unaware that the AAO had denied APACSA's appeal. At the time they filed this case, USCIS's online case status system still listed that application as pending.

## DISCUSSION

APACSA filed its claim because USCIS's decision to deny Wong's and Lo's I-485 applications was predicated, in part, on Wong continuing to work for APACSA after USCIS had denied its H1-B petition. Wong and APACSA believe that USCIS's decision with respect to the H1-B petition was erroneous and seek to compel USCIS to reverse its decision denying Wong's and Lo's I-485 applications.

Defendants argue that the merits of this argument aside, APACSA lacks standing to challenge the March 2003 denial of its H-1B petition because: (1) it has failed to allege an injury-in-fact, a necessary element for constitutional standing; (2) whatever injury it may have suffered is not redressable by this court; and (3) its corporate status was dissolved at the time it

brought this suit. Because the court agrees with the first two arguments, it need not address the third.

**I.      Standing**

    **A.     Legal Standards**

Standing under Article III of the Constitution has three elements:

> First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) "actual or imminent, not 'conjectural' or 'hypothetical,' " . . . . Second, there must be a causal connection between the injury and conduct complained of-the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." . . . Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Colwell v. Dep't of Health and Human Servs.*, 558 F3d 1112, 1121-22 (9th Cir 2009), quoting *Lujan v. Defenders of Wildlife*, 504 US 555, 560-61 (1992) (internal citations omitted).

"'[S]tanding is determined as of the date of the filing of the complaint . . . . The party invoking the jurisdiction of the court cannot rely on events that unfolded after the filing of the complaint to establish standing.'" *Wilbur v. Locke*, 423 F3d 1101, 1107 (9th Cir 2005), *cert denied*, 546 US 1173 (2006), quoting *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F3d 453, 460 (5th Cir 2005).

    **B.     Injury-in-Fact**

Defendants contest APACSA's challenge because the Complaint fails to allege that it has suffered or will suffer any injury as a result of USCIS's denial of its H-1B application on Wong's behalf. Wong no longer works for APACSA, and APACSA does not allege that it would like to employ Wong in the future or that Wong would like to work for APACSA but

6 - OPINION AND ORDER

cannot due to USCIS's actions.  Nor does APACSA allege that USCIS's action has affected its ability to find and hire workers to complete graphics design work or has caused it to lose any workers.  APACSA does not deny this deficiency and points to no allegation stating an injury or from which an injury may be inferred.

Instead, APACSA first argues that employers who are denied H-1B visas routinely challenge UCSIS's decisions in federal courts without standing becoming an issue, citing a long list of cases as examples.  This argument fails.  Simply because some cases do not address standing in the context of a challenge by an employer to the denial of a H-1B visa does not mean that standing can never be an issue in such a case.  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan*, 504 US at 560.  Although it may not be raised as an issue in every case, it is an absolute and ever-present prerequisite to a federal court's jurisdiction.  *See Nat'l Licensing Assoc. v. Inland Joseph Fruit Co.*, 361 F Supp2d 1244, 1248 (ED Wash 2004) ("The constitutional requirements for standing emanate from Art. III, § 2, of the U.S. Constitution, which delineates the absolute limit on federal courts' jurisdiction to adjudicate only 'cases' or 'controversies.'), citing *Allen v. Wright*, 468 US 737, 750-51 (1984).

Moreover, the cases cited by APACSA are distinguishable on their facts.  All but one of these cases involved a putative employer unable to employ an alien in an available position because USCIS (or INS) had denied its H-1B application.[2]  Because the denial of the visa

---

[2] *See Global Fabricators, Inc. v. Holder*, 320 Fed Appx 576, 2009 WL 774405 (9th Cir 2009) (unpublished opinion); *Assuta Med. Ctr. v. U.S. Dep't of Homeland Sec.*, 265 Fed Appx 542, 2008 WL 205485 (9th Cir 2008) (unpublished opinion); *EG Enters., Inc. v. U.S. Dep't of Homeland Sec.*, 467 F Supp2d 728 (ED Mich 2006); *Fred 26 Importers, Inc. v. U.S. Dep't of Homeland Sec.*, 445 F Supp2d 1174 (CD Cal 2006); *Royal Siam Corp. v. Ridge*, 424 F Supp2d 338 (D Puerto Rico 2006), *aff'd*, 484 F3d 139 (1st Cir 2007); *Button Depot, Inc. v. U.S. Dep't of Homeland Sec.*, 386 F Supp2d 1140 (CD Cal 2005); *Shanti, Inc. v. Reno*, 36 F Supp2d 1151 (D Minn 1999); *Young China Daily v. Chappell*, 742 F Supp 552 (1989) (ND Cal 1989); *Louisiana Philharmonic Orchestra v. I.N.S.*, Civil No. 98-2855, 2000 WL 282785 (ED La March 15, 2000); *Mercy Catholic Med. Ctr. v. Reno*, Civil No. 94-4082, 1994 WL 698293 (ED Pa Dec. 9, 1994).

application would deprive the employer of the prospective employee, each employer had a concrete and particularized injury, namely the inability to hire a specific employee it would have hired absent the agency's action. The other case, *Pesikoff v. Sec'y of Labor*, 501 F2d 757 (DC Cir), *cert denied*, 419 US 1038 (1974), involved an APA challenge to the denial of a labor certification pursuant to 8 USC § 1182(a)(14) (1970) (now 8 USC § 1188(a)), which is not at issue in this case.[3] Additionally, as in the other cited cases, the plaintiff in *Pesikoff* was actively seeking to employ an alien and was thwarted by the action of a federal agency, which again presents a text-book instance of an actual, concrete injury.

Unlike these cases, APACSA does not allege that it is seeking to employ Wong. Rather, Wong left APACSA after defendants' initial denial and now works for a different company. The Complaint does not allege that defendants' actions deprived APACSA of Wong's services or that Wong intends to return to APACSA. On its face, APACSA's Complaint fails to establish an injury-in-fact related to its employment needs.

APACSA takes another tack by asserting that it has suffered an injury in the form of the threat of criminal and civil penalties for having employed an unauthorized alien after defendants denied the H-1B petition. *See* INA § 274A(e)(4), codified at 8 USC § 1324a(e)(4); 8 CFR § 274a.10. This argument also fails.

To assert standing on the ground that it may face future prosecution or enforcement action, APACSA "must show a '*genuine* threat of *imminent* prosecution.'" *San Diego County*

---

[3] Approval of a labor certification by the Department of Labor is required for any alien seeking to enter the United States to work and to remain permanently in the United States in immigrant status. *See* 8 USC § 1182(a)(5)(A)(i). The purpose of the labor certification requirement is to prevent the permanent admission of aliens to the United States who would compete for jobs that American workers could fill. *See Ming Wang v. INS*, 602 F2d 211, 213 (9th Cir 1979). In contrast, an approved labor certification is required to "be admitted or provided status as an H-1B *nonimmigrant* in an [specialty] occupational classification." 8 USC § 1182 (n)(1) (emphasis added). Unlike a labor certification application, a labor condition application need not attest to the unavailability of American workers to fill the position.

*Gun Rights Comm. v. Reno*, 98 F3d 1121, 1126 (9th Cir 1996) (emphasis in original), quoting *Wash. Mercantiel Ass'n v. Williams*, 733 F2d 687, 688 (9th Cir 1984).  While a plaintiff is not required to undergo prosecution in order to seek relief, an "imaginary or speculative" fear of prosecution is not enough.  *Darring v. Kincheloe*, 783 F2d 874, 877 (9th Cir 1986), citing *Younger v. Harris*, 401 US 37, 42 (1971); *see also Lujan*, 504 US at 559-60 (injury must be "actual or imminent, not conjectural or hypothetical").

APACSA does not allege that it is under imminent threat of prosecution for unlawfully employing Wong.  It has not even shown that a "prosecution is likely, or even that a prosecution is remotely possible."  *San Diego County*, 98 F3d at 1128, quoting *Younger*, 401 US at 42.  Absent any such allegation, its claim is merely hypothetical and conjectural.[4]  Accordingly, it fails to show a concrete and imminent injury sufficient to satisfy the injury-in-fact element of standing.

### B. Redressability

"When evaluating redressability, the key question is whether the harm alleged by the plaintiff is *likely* to be alleviated by a ruling in its favor."  *Maldano v. Morales*, 556 F3d 1037, 1043 (9th Cir 2009) (emphasis in original).  APACSA argues that this court could redress "the problems" in this case by declaring that the legal basis for defendants' denial of APACSA's H-1B petition was incorrect and by ordering defendants to approve the H-1B petition valid through 2005.

---

[4] Even if defendants did threaten imminent criminal prosecution or civil enforcement, their case would be barred by the applicable federal statute of limitations.  *See* 18 USC § 3282 (five-year statute of limitations non-aggravated federal crimes); 28 USC § 1658 (four-year statute of limitations on civil enforcement actions).

This unusual request for retroactive relief demonstrates the true nature of APACSA's claim. In the related case, Wong and Lo seek to acquire permanent resident status. They believe this status has been denied due to Wong's period of unauthorized employment with APACSA, but also believe that Wong lacks standing to challenge the rejection of APACSA's application because only the employer can apply for an H-1B visa. Thus, APACSA has filed this suit, not because it has any current interest in employing Wong, but in order to help Wong and Lo acquire permanent resident status.

Because APACSA does not allege that Wong wishes to work for it, its loss of Wong is not redressible by any relief this court could fashion at this time. A judgment declaring its 2002 application valid through 2005 would have no legal effect on future H-1B applications, notwithstanding any assurance it may provide APACSA that future applications for that position would be approved. Thus, any ruling by this court would be nothing more than an advisory opinion on a dead issue and would offer no meaningful relief to APACSA for Wong's loss.

Even if APACSA has suffered a cognizable injury that could be redressed by the relief APACSA requests, defendants argue that this court still cannot provide that relief for two reasons. First, they argue that USCIS has no authority to now approve APACSA's 2002 H-1B petition because it is prohibited from doing so absent a valid labor condition and APACSA's labor condition has expired. Second, overturning its April 2004 decision would help neither APACSA nor Wong because Wong still would have accrued a period of unauthorized employment by choosing to remain employed with APACSA while the initial denial was on appeal.

Because APACSA has not alleged a sufficient injury-in-fact, and cannot do so as discussed below, it is unnecessary for the court to reach these issues. Both of these issues are closely tied to Wong's claim that USCIS improperly denied her application for permanent resident status. What effect, if any, her decision to remain working for APACSA during the pendency of its H-1B appeal has on her ability to obtain permanent resident status must be addressed in the context of her case. This court's jurisdiction to fashion an appropriate remedy consistent with the INA and APA is also most appropriately left to consideration in that context. Accordingly, no opinion is expressed on these issues at this time.

## II.     Leave to Amend

Recognizing the deficiency of the allegations in its Complaint, APACSA has submitted the affidavit of its Chairman, Victor Leo, along with supplemental briefing, which this court construes as an effort to obtain leave to file an amended complaint with additional jurisdictional allegations. Leo Decl. (docket #22), ¶¶ 1-2; *see* 28 USC § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). A motion for leave to amend is assessed by five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended her complaint. *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F3d 817, 824 (9th Cir 2002) (citation omitted). Only the fourth factor is at issue here. Thus, APACSA should be given leave to amend unless it is "not factually possible for [it] to amend the complaint so as to satisfy the standing requirement." *Id* (citation, internal quotations omitted).

In his declaration, Leo makes several statements that are relevant to APACSA's potential standing. First, Leo asserts that "Ms. Wong was forced to leave [APACSA] to pursue other option[s] due to the indefinitely lengthy and uncertain wait for the AAO appeal result."

11 - OPINION AND ORDER

*Id*, ¶ 11.  Thus, he submits that APACSA has suffered an injury by being deprived of its "chance of the service of Ms. Wong, a highly artistic and creative professional" with the result that its "most important outreaching tool – website has been cut off."  *Id*, ¶ 12.  This has left APACSA unable to fulfill a key component of its core mission of reaching out to ethnic Asian groups through its website to let them know of APACSA's substance abuse programs.  *Id*.  He further alleges that "[APACSA] continues to extend its good-faith job offer of graphic designer position [*sic*] to Ms. Wong should USCIS changes [*sic*] its position on its own or by the court and approves [*sic*] our H-1B petition."  *Id*, ¶ 14.  He does not state whether Wong is interested in accepting this offer.

In addition, Leo states that the 2004 denial has also deprived APACSA of its "capability of looking in the pool of foreign professionals who would be uniquely qualified" for the position" because USCIS denied the H-1B visa application on the basis that the position was not a permissible "speciality occupation," and not on anything particular to Wong.  As a result, APACSA believes it would be futile to submit another application on behalf of any other foreign professional for that same position.  *Id*, ¶ 13.  Therefore, "[u]nless the court declares that [APACSA's] Graphic Designer position is a qualified H-1B [position], we are in fact permanently barred from hiring any alien workers for the graphic designer position, which has been, is currently, and would in the future be detrimental to our organization's development."  *Id*.    While the loss of a valuable employee due to agency inaction and delay can be a concrete, particularized injury, this court can provide no relief for that injury due to mootness.  "A case becomes moot whenever it 'los[es] its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law.'"  *West v. Sec'y of Dep't of Transp.*, 206 F3d 920, 924 (9th Cir 2000), quoting *Hall v. Beals*, 396 US 45,

12 - OPINION AND ORDER

48 (1969). This occurs when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 US 277, 287 (2000) (quotations, citation omitted). A federal court has no authority to give opinions upon moot questions; "an actual controversy must be extant at all stages of review . . . ." *Arizonans for Official English v. Ariz.*, 520 US 43, 67 (1997).

Wong left APACSA on her own volition to pursue other employment. When she left, the controversy over APACSA's H-1B application on her behalf was no longer live. While USCIS's inaction may have motivated her departure from APACSA, nothing indicates that Wong has any intention of returning to its employ. As is evident from the cases cited by Wong, the live controversy requirement is provided by a present intent by both parties to enter into an employment relationship which is being thwarted by USCIS or some other third party. If Wong no longer wants to enter into the employment relationship, the question of whether USCIS's denial was appropriate becomes purely academic. Leo's averment that APACSA continues to extend a "good faith" offer of employment to Wong for the future is not sufficient. "'[S]ome day' intentions – without any description of concrete plans, or indeed any specification of *when* the some day will be – do not support a finding of the 'actual or imminent injury' that our cases require." *Lujan*, 504 US at 564. At this point, this court can provide no meaningful relief to APACSA for the injury it suffered in losing Wong. Therefore, its claim is moot.

The second type of injury described by Leo is not ripe. "Ripeness is peculiarly a question of timing. Its basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Union Carbide Agr. Products Co.*, 473 US 568, 580 (1985) (internal citation and quotations omitted)." Although APACSA's hesitancy in seeking another qualified alien to fill its position is understandable, the Constitution

13 - OPINION AND ORDER

nonetheless requires an active, ongoing controversy for this court to have authority to extend its jurisdiction. Until APACSA actually applies for and is denied another H-1B visa, no controversy exists for this court to address. Leo does not assert that APACSA has attempted to recruit new talent, but has been thwarted. Rather, he merely speculates that any future H-1B visa applications would be futile. There is no indication that USCIS's determination on a given application serves as a bar against or precedent detrimental to future applications for the same position. Indeed, as alleged in the Complaint, USCIS has subsequently approved several H-1B visas for similar positions filled by Wong. As defendants concede, it is entirely possible that a future application by APACSA for the same position filled by Wong could be granted based on new or clarified information about the position.

Moreover, until APACSA has a particular applicant whom it seeks to employ, its claim of being unable to fill the graphic designer position with needed talent is pure conjecture. Until it actually has a person in mind to hire, some U.S. citizen may be capable of performing the job which would eliminate the need for a future H-1B visa.

Unfortunately, Wong's decision to leave APACSA before it had the chance to challenge her H-1B denial has left it in a catch-22 situation: it cannot fill its graphic designer position with a nonimmigrant alien without a valid H-1B visa, yet it is hesitant to apply for one again based on the prior denial. A court order declaring its 2002 application valid would be ineffectual. Nothing about APACSA's current situation without Wong would change, and case law suggests that the order would have no binding effect on future H-1B applications for a potential replacement. *See Royal Siam Corp. v. Chertoff*, 484 F3d 139, 148 (1st Cir 2007) (fact that USCIS had previously approved visa of the same employee for the same position did not preclude agency from later finding that the position was a non-specialty occupation in the alien's

14 - OPINION AND ORDER

application for an extension of H-1B status).  Such an order would be the very definition of advisory.

Finally, APACSA asserts that being be forced to go through the expensive application process again would be an exercise in futility given USCIS's decision on its last application.  An analogous argument was rejected in *Amersi Enters. Inc. v. I.N.S.*, 741 F Supp 37, 39 (NDNY 1990), where a corporation challenged the ruling by the INS denying its nonimmigrant visa petition.  The court held that the corporation's declaratory action was rendered moot by the employee later obtaining an adjustment of status to permanent resident, reasoning that "[p]laintiffs' suggestion that the corporation 'will suffer to its detriment if it has to file a new suit for another employee to have the same issue resolved'" was a nonjusticiable hypothetical question.  *Id*.  APACSA's final argument is also a red herring.  Even if the court granted the relief it sought, APACSA still would have to apply for a new H-1B visa for any new nonimmigrant alien it sought to place into its graphic designer position.  *See* 8 USC § 1184; 8 CFR 214.2(h).  USCIS would not be bound by this court's order for future positions as its decision would be limited to the facts USCIS relied upon in reaching its decision with respect to Wong.  Thus, APACSA may still have to go through the appeals process and a potential court challenge even if this court granted the relief sought.

## **ORDER**

Because Wong no longer works for APACSA or seeks to do so, the controversy over its 2002 H-1B application on her behalf is over.  As a result, APACSA lacks standing to sue and

15 - OPINION AND ORDER

any amendment to its Complaint seeking to challenge that decision would be futile.  Therefore, APACSA's Complaint is DISMISSED with prejudice.

    DATED this 5th day of August, 2009.

                                               /s/ Janice M. Stewart
                                             Janice M. Stewart
                                             United States Magistrate Judge